## COMMERCIAL EXCHANGE BANK v. McLEOD ET AL.

1. **Consideration:** PRESUMED FROM WRITING. A written contract (a mortgage in this case) imports a consideration and casts the burden upon him who denies it.

2. ——: SETTLEMENT OF CONTROVERSY. A mortgage made to secure a claim in litigation *held* to be based upon a sufficient consideration.

3. **Promissory Note:** PURPOSE FOR WHICH GIVEN: LANGUAGE OF AIDED BY LANGUAGE OF COLLATERAL MORTGAGE. A writing on the back of a note purported to state the extent of the makers' liability, but a reformation of the writing was sought in order to make it show the real agreement of the parties. *Held* that the recitations of certain mortgages subsequently executed by the same makers to secure the note was properly considered in arriving at the intention of the parties.

*Appeal from Cerro Gordo District Court.*

TUESDAY, DECEMBER 15.

ACTION IN EQUITY. Judgment for the plaintiff, and defendants appeal.

*Glass & Hughes*, for appellants.

*Blythe & Markley*, for appellee.

SEEVERS, J.—The undisputed facts are that in July, 1882, one Ridgway made an arrangement whereby the plaintiff agreed to advance him money for business purposes from time to time, as he might need it. Ridgway was to draw his checks or drafts on the bank. To secure the amount of such over-drafts, a note was executed for $2,900, payable to the bank, and the same signed by Ridgway and the defendant Mary McLeod, and the collection of the note was guarantied by one Berry. Upon the back of the note there was an indorsement showing the overdrafts of Ridgway, not exceeding the amount of the note. In October, 1882, Ridgway was indebted to the bank in the sum of nearly $1,900, and, Berry desiring to be released from his continuing liability, it was agreed between Ridgway and the plaintiff that a note for the same amount should be executed and signed by Ridgway and the defendants Mary and J. C. McLeod. Such a note was executed, but it is a controverted question what it was given to secure. The following words are indorsed on the note: "It is understood by the makers of the note that it is given to secure overdrafts of G. E. Ridgway due the Commercial Exchange Bank." The plaintiff claims that the contract in fact was that the note was given as security for existing and all future overdrafts, and that the contract, as expressed in the indorsement on the note, by the mutual mistake of the parties, does not state the true contract. The relief asked is that the writing aforesaid be reformed, and that the plaintiff may have judgment for the amount due on the note. The defendants claim that the writing states the

true and only contract that was made.   It becomes material to determine which of these theories is correct, for the reason that the plaintiff only seeks to recover for overdrafts made by Ridgway subsequent to the execution of the note.   There is some conflict in the parol evidence as to what the contract was, and whether there was a mistake in the writing.

The plaintiff, in a supplemental petition, states that in August, 1883, there was an accounting had between the plaintiff and defendants, the two McLeod's and that it was then agreed that there was due the plaintiff on the note for overdrafts the sum of $1,322.84, to secure which the said defendants executed certain mortgages, and the plaintiff asks judgment for said amount, and the foreclosure of the mortgages. The defendant, in answer to this petition, pleaded that the mortgages were procured by fraud, and were executed without consideration.

I.   The mortgages import a consideration, and the burden was on the defendants to establish that they were procured by

1. CONSIDER-
ATION: pre-
sumed from
writing.

fraud, and were without consideration.   We have examined the evidence, and are fully satisfied that the defendants have failed to establish that the mortgages were procured by fraud, and we are equally clear that they were executed upon a sufficient consideration.   The evidence shows that a suit had been commenced on the note,

2. ——: set-
tlement of
controversy.

and that the attorney, acting for the plaintiff, called upon the defendants for the purpose of obtaining payment or security for the amount due.   He stated the amount he claimed to be due, and that the defendants were bound therefor because of their having signed the note. According to his evidence, they admitted their liability.   It will be conceded that the defendants deny in their evidence that they did so; but we must remark that there is an apparent want of frankness and clearness in the evidence of the defendants, which generates the conclusion that full faith and credit cannot be given to all of their statements.   But, be this as it may, the claim was made on the part of the plaintiff

that the defendants were liable on the note to the amount then claimed to be due. It may be conceded that this was a doubtful question. It certainly was not entirely clear that they were not liable. A suit against them was then pending. In settlement of the suit, and the whole controversy, the mortgages were executed, as we think, upon a sufficient consideration.

II. The mortgages contain this statement: "Whereas, the said J. C. McLeod and Mary McLeod are indebted unto the said Commercial Exchange Bank in the sum of two thousand dollars, as witnessed by one promissory note of $2,000, dated October 31, 1882, said note given as collateral to secure any overdrafts of G. C. Ridgway at said bank, said overdrafts now being the sum of $1,322.84; also all costs in a certain attachment suit on said note, now commenced in Worth county, Iowa." Now, conceding that the parol evidence is conflicting, and is not alone sufficiently definite and certain to warrant us in reforming the writing on the back of the note, we think the statements in writing in the mortgages in aid of the parol evidence on the part of the plaintiff clearly creates a preponderance in its favor. We go further, and say that, when the statement in the mortgage is considered together with the conceded facts, the plaintiff thereon is entitled to a reformation of the writing. The defendants clearly admit in the mortgage that the note was given to secure any overdrafts and the amount thereof. These are the only disputed questions. As the defendants, in substance, admit in writing what the true contract is, we are not required to determine whether a contract in writing against a surety can be reformed on parol evidence alone. There is some evidence tending to show that the amount stated in the mortgages is not in fact due, and that Ridgway is entitled to a credit of about $1,000 which the plaintiff has not given him. But as to this, the preponderance of the evidence is clearly with the plaintiff. AFFIRMED.

VOL. LXVII—46

<div style="margin-left:2em; font-style:italic; font-size:smaller">3. PROMISSORY note: purpose for which given: language of aided by language of collateral mortgage.</div>